IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TYSHA J. MANNING, RICHARD NEIL CHANEY,
 and STEPHANIE A. TEJADA,

                    Plaintiffs,

vs.                                    Case No. 11-2010-SAC

BLUE CROSS AND BLUE SHIELD OF KANSAS
CITY and EPOCH GROUP, L.C.,

                    Defendants.


**MEMORANDUM AND ORDER**

       Plaintiffs, having been terminated on the same day from their

employment in the same department, bring claims against their previous

employer.[1] Plaintiffs variously allege discrimination and retaliation based on

race and national origin, and discrimination and retaliation based on

disability.  Plaintiffs include a state law claim for breach of an implied

contract. This case comes before the Court on Plaintiffs' response to the

Court's show cause order, and on Defendant's motion for summary

judgment, which Plaintiffs oppose.

**I. Procedural Background**

       In an order dated May 16, 2012, the Court ordered the Plaintiffs to

show cause why their Title VII and ADA claims stated in their first through

fifth claims should not be dismissed for lack of subject matter jurisdiction

---

[1] Epoch Group is a wholly-owned subsidiary of Blue Cross and Blue Shield of Kansas City.
For purposes of simplicity, the Court refers to Defendant instead of Defendants.

based on their failure to exhaust the required administrative remedies. Plaintiffs timely responded, stating their belief that all claims had been properly exhausted, and moving to amend the pretrial order.

## II. Motion to Amend Pretrial Order

Plaintiffs move to amend the pretrial order with regard to their third and fourth theories of recovery. Defendant has not responded to the motion.

Plaintiffs ask to withdraw Manning and Tejada's Title VII race discrimination claims stated in their third theory of recovery, and proceed instead under 42 USC § 1981. This request is granted. Plaintiffs' race discrimination claims shall proceed solely under § 1981.

Plaintiffs do not specify the amendment they seek regarding their fourth theory of recovery, but from the nature of Plaintiffs' other assertions, the Court assumes Plaintiffs wish to state their race-based retaliation claims under both Title VII and Section 1981. Because Title VII and Section 1981 share the same elements and Defendant has not shown that it would be prejudiced by this change, this motion is also granted.

## III. Response to Show Cause Order

In response to the Court's show cause order, Plaintiffs show the court that they have filed various KHRC claims, but do not address the Court's expressed concern that the scope of the administrative claims filed is substantially different from the claims currently being litigated, affecting this court's subject matter jurisdiction.

## A. Manning and Tejada's Title VII Race Claims

Manning and Tejada specifically contend that they properly exhausted their racial discrimination and race-based retaliation claims, and show the KHRC claims they submitted. Tejada's KHRC claim contains only one statement relating to her retaliation claim: "I have been retaliated against by Respondent, in violation of my rights to be free from discrimination in the workplace." Dk. 58, Exh. A, p. 6. Even reading this conclusory retaliation claim in conjunction with Tejada's race discrimination claim sheds no light on the matter. Her race discrimination claim states:

> I was unequally treated as compared to others, as a result of my race; I have been denied employment opportunities; [and] I have been the victim of Race discrimination as a result of the above, and actions taken against me by Respondent.

*Id.*, p. 5. No other factual basis for either race claim is stated.

Manning's KHRC claim relating to race-based retaliation is similarly generic in stating only the following: "I have been retaliated against by Respondent, in violation of my rights to express concerns regarding Racial discrimination in the workplace." Dk. 58, Exh. C., p. 5. Her race discrimination claim is equally conclusory in stating:

> I have been subjected to an unwelcome working environment by Respondent as a result of my race; [and] I have been the victim of Race discrimination as a result of the above, and actions taken against my by Respondent.

*Id.*, p. 5.

These administrative claims neither identify the parties involved nor generally describe the acts or practices complained of. Their vague, generalized language is insufficient to meet the purposes of EEOC charges – "to protect employers by giving them notice of the discrimination claims being brought against them, [and to provide] the EEOC with an opportunity to conciliate the claims." *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004).

While precise pleading is not required for purposes of Title VII exhaustion, a complete absence of factual specificity, such as here, defeats a plaintiff's subsequent claims. *See e.g., Pierson v. K.W. Brock Directories, Inc.*, 2008 WL 2782755, 3 (D.Kan. 2008) (finding following charge insufficient: "I was sexually harassed at work. I complained to management about it and finally felt forced to quit.") "A plaintiff may not make a conclusory charge of discrimination and then file suit on whatever facts or legal theory the plaintiff may decide upon." *Faibisch v. University of Minnesota*, 304 F.3d 797, 803 (8th Cir. 2002). Instead, the charge must identify the bad actors and describe generally the action or practices complained of. *Foster*, 365 F.3d at 1196.

Where, as here, the allegations contained in an administrative charge are so vague so as to never raise even the inference that a particular claim exists, dismissal for failure to exhaust administrative remedies with respect to that claim is proper. *See Taylor v. Va. Union Univ.*, 193 F.3d 219, 239

4

(4th Cir. 1999) (en banc); *Marshall v. Fed. Express Corp.*, 130 F.3d 1095,

1098 (D.C.Cir. 1997) ("A vague or circumscribed EEOC charge will not

satisfy the exhaustion requirement for claims it does not fairly embrace.").

The Court finds that Manning and Tejada's race discrimination and race-

based retaliation claims under Title VII have not been exhausted, and must

be dismissed for lack of subject matter jurisdiction. Accordingly, their claims

stated in the third and fourth counts shall proceed solely under Section

1981.

### B. Tejada and Chaney's ADA claims

Plaintiffs Tejada and Chaney contend that they properly exhausted

their ADA claims. Tejada shows the Court her KHRC claim alleging that she is

disabled, that she told her employer of her disability, and that Defendant

took the following discriminatory and retaliatory actions:

> failed to offer me reasonable accommodation for my disabilities, and
> has otherwise discriminated against me as a result of my disability
> status; [and] on February 25, 2010, I was denied employment
> opportunities by Respondent, as a direct result of a prior Negotiated
> Settlement Agreement between Respondent and this agency.

Dk. 58, Exh. A. p. 5. No other factual basis is stated for Tejada's disability

claim or for her disability-related retaliation claim.

Tejada's assertions that Defendant failed to offer her reasonable

accommodations and otherwise discriminated against her based on her

disability are conclusory and factually insufficient to preserve her claims.

Even the latter assertion regarding "denial of employment opportunities"

lacks clarity, despite its date reference.

Chaney's charge similarly alleges disability discrimination and

disability-related retaliation as follows:

> As of February 25, 2010, I have been retaliated against and
> denied employment opportunities by Respondent and terminated, as a
> result of my disabling conditions.

Because these charges drafted by current counsel are vague and conclusory

and provide no factual basis, they fail to meet the purposes of an EEOC

charge and cannot serve as a basis for this Court's subject matter

jurisdiction. Accordingly, the claims stated in the first and second counts

shall be dismissed for lack of jurisdiction.

**C. Tejada's national origin discrimination claim**

Tejada's response to the show cause order does not challenge the

Court's finding that Section 1981 does not encompass the particular claim of

national origin discrimination Tejada has brought in this case as her fifth

theory of recovery. Although national origin claims are actionable under Title

VII, they must be properly exhausted. Tejada's KHRC claim of national origin

discrimination dated in March of 2010 states that she was "treated unequally

as compared to others, as a result of my National Origin, [and that she has]

"been the victim of National Origin discrimination." Dk. 58, Exh. A, p. 5.

Because this charge drafted by current counsel is vague and conclusory and

provides no factual basis, it fails to meet the purposes of an EEOC charge

and cannot serve as a basis for this Court's subject matter jurisdiction. The fifth claim stated in the pretrial order shall thus be dismissed.

### D. Conclusion

Accordingly, for the reasons stated herein and in its show cause order, the Court dismisses for lack of subject matter jurisdiction, without prejudice, the following counts: one (Tejada and Chaney's claims for disability discrimination under the ADA); two (Tejada and Chaney's claims of disability-based retaliation under the ADA); three and four (Tejada and Manning's claims of race discrimination and race-based retaliation) to the extent they are based on Title VII; and five (Tejada's claim of national origin discrimination under Title VII). This leaves for resolution in the summary judgment motion only Manning and Tejada's § 1981 claims of race discrimination and race-related retaliation (the third and fourth theories stated in the pretrial order), and all parties' claims of breach of an implied contract (the sixth theory stated in the pretrial order).

### IV. Motion for Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir.), *cert. denied*, 537 U.S. 816, (2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). In attempting to meet this standard, a movant that "does not bear the ultimate

burden of persuasion at trial" need not negate the other party's claim; rather, the movant may simply point out to the court "a lack of evidence for the nonmovant on an essential element of that party's claim." *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Celotex*, 477 U.S. at 324). In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). Nor can the nonmoving party simply rest upon its pleadings to satisfy its burden. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986); *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). A properly submitted summary judgment motion cannot be defeated by "mere allegation[s] or denials." *Anderson*, 477 U.S. at 256; *see also* Fed. R. Civ. P. 56(e). The court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Summary judgment is not a disfavored procedural shortcut, but is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

## A. Uncontested Facts

Plaintiffs were employed at Epoch Group, a wholly-owned subsidiary of Blue Cross. Epoch Group consisted of three departments which performed separate functions: Epoch 2, National Alliance, and the Mail Unit. Plaintiffs were hired in the spring of 2008 to work as Claims Examiners in the Epoch 2 department, which provided services to Blue Cross by processing its overflow of medical and dental claims. Plaintiffs' employment was terminated on February 25, 2010, when the Epoch 2 department, consisting of eight employees, was eliminated.

### 1. The Layoffs and Open Positions

Starting in 2008, a series of layoffs occurred within Epoch Group. In June of 2008, Epoch Group's Human Resources (HR) position was eliminated, and Blue Cross began providing HR functions for Epoch Group. From September of 2008 through July of 2009, the number of Epoch Group employees decreased from approximately 180 to approximately 25.

In May of 2009, Nancy Creasy became Vice President of Operations for Blue Cross and began providing oversight to Epoch Group's operations. Creasy and had little involvement in or awareness of the specific day-to-day activity in the Epoch 2 department where Plaintiffs worked, but provided oversight and direction to Dawn Sprague, the manager who oversaw the day-to-day operations of Epoch Group.

In October of 2009, two Claims Examiner positions and one Customer Service position in the National Alliance department were advertised as open to all Epoch Group employees, including Plaintiffs. None of the Plaintiffs was hired for any of those positions, and this fact forms the primary basis for their claims in this lawsuit.

Claims Examiners and Customer Service representatives perform separate functions. A Claims Examiner is responsible for: 1) assessing claims information; 2) processing payments for medical and/or dental expenses according to specified contract provisions; and 3) providing answers to internal inquiries regarding insurance claims. A Customer Service representative is responsible for: 1) responding to a variety of inquiries from members and their dependents, hospitals, providers, attorneys and agents; 2) interpreting multiple contracts in response to benefit and claim inquiries: and 3) researching membership databases and billing history to resolve membership issues.

Sprague sent notices of the three open positions to Epoch Group employees, including the Plaintiffs, by an email which included a link to the application form, which was to be completed online. Defendant never received Manning's application, or any application from any Epoch Group employees for the Customer Service position, but received only external, non-Epoch Group employee applications for that position. Defendant decided

those applicants did not have the customer service personality Epoch Group was seeking.

Because Sprague was not satisfied with the external applications, she approached Amanda Teel, a Customer Service representative in Epoch 2, and asked about her interest in the Customer Service position in National Alliance. Sprague had observed Teel's performance as a Customer Service representative in Epoch 2 and felt she had performed well in that position. Amanda Teel had two years of experience at Epoch 2 in a Customer Service position at the time she got the National Alliance position, for which she had not applied, around November 23, 2009. Teel is Caucasian, non-Hispanic, non-disabled, and had not complained to Defendant about discrimination.

Defendant did not receive an application from any of the Plaintiffs for any of the three open positions. Tejada submitted an application by email, then asked Sprague about her application a week or two later. Sprague responded that Tejada's application, as well as some other applications, had not been received. Sprague told Tejada to try again, and sent her a link for the application. Tejada couldn't get that link to pull up on her computer or couldn't get the application/email to go through. She thought her computer was not working properly, got frustrated with the process, and just gave up, knowing that she had not successfully resubmitted her application for the claims examiner position.

Plaintiff Manning submitted an application for the positions, and asked

11

Sprague if she had received it. Sprague checked, then told Manning that she had not received it. Manning's impression, based on Sprague's attitude and manner of telling her that information, was that Sprague thought Manning should not apply for the position, so Manning chose not to pursue the matter further. Neither Manning nor Tejada complained about any trouble applying for the open positions in October 2009 either to HR or to any outside administrative agency before the Epoch 2 department was closed in February of 2010.

Sprague posted the job openings, interviewed selected persons, and filled all three National Alliance positions at issue in this case in the fall of 2009, informing Creasy of her decisions. Creasy had no substantial involvement in filling those positions. Sprague hired Sue Carpenter, an Epoch Group employee, on approximately November 18, 2009 for one of the Claims Examiner positions in National Alliance, based on her over twenty years of experience as a Claims Examiner. Carpenter, like Tejada, experienced difficulty in attempting to apply online for the positions, and resubmitted her application. Sprague hired Lauren Franco, an external candidate who applied and was qualified, for the second Claims Examiner position in National Alliance, on or about November 23, 2009.

## 2. The Elimination of Epoch 2

In December of 2009, Creasy spoke to her superiors about the future of Epoch 2 and the fact that Epoch 2 was running out of work. As a result of

these discussions, in February of 2010, Defendant made the business decision to eliminate the Epoch 2 department and terminate all eight employees who worked there, three of whom were the Plaintiffs. Defendant also eliminated the Epoch Mail Unit, which consisted of two employees, at that same time. The decision to eliminate the Epoch 2 and Mail units was a continuation of the layoffs that had previously occurred within Epoch Group.

In the February 2010 department elimination, Epoch Group did not analyze each individual employee to determine who would be terminated. Creasy made the decision, with the Executive Vice-President's approval, to close the entire Epoch 2 department based on financial considerations, because Blue Cross could handle the reduced amount of claims work itself, so no longer needed overflow services.  At the time the Epoch 2 department was eliminated, its employees were one African-American, six Caucasians, one Hispanic, four persons with active disability claims and four persons without active disability claims.

The sole remaining Epoch Group department, the National Alliance department, also included individuals of various races and ethnicities, as well as persons with and without active disability claims. In February of 2010, the National Alliance department consisted of four African-Americans, seven Caucasians, three persons with active disability claims and eight without active disability claims.

13

Layoffs continued within Epoch Group, and in October 2010, Sprague was laid off. In January 2011, the National Alliance Department was consolidated with Blue Cross and was moved to Blue Cross headquarters, where it continues to exist. Other uncontested facts will be included in the analysis below, as relevant.

**B. Section 1981 Discrimination**

Plaintiffs have brought claims of race discrimination, but the nature of these claims is amorphous because the pretrial order alleges solely that Plaintiffs were "denied employment opportunities" and "suffered an adverse employment action." The Court thus relies on the parties' characterizations of these claims in their briefs.[2]

**1. Termination**

Although the pretrial order fails to adequately frame the parties' claims, it includes some references to discriminatory termination. Plaintiffs' briefs, however, appear to have abandoned any such claim. In the event the discriminatory termination claim has not been abandoned, the Court finds that Plaintiffs have failed to raise a material question of fact as to a prima facie case. *See Juarez v. ACS Gov't Solutions Group, Inc.*, 314 F.3d 1243, 1245-46 (10th Cir. 2003) (stating prima facie case elements for RIF). The undisputed facts show the following: 1) Defendant made no individual decisions with respect to the reduction-in-force; 2) Defendant eliminated the

---

[2] Plaintiffs sought and received leave to file a surreply, but filed no surreply. *See* Dk. 55, 56.

entire department in which Plaintiffs worked; and 3) the individuals in that department fell within various protected and unprotected categories. Plaintiffs have failed to raise any inference that Defendant's decision to eliminate the Epoch 2 department or to terminate any Plaintiff within that department was based on any protected category.

## 2. Failure to Hire

Plaintiffs' briefs contend that Defendant discriminated against Plaintiffs Manning and Tejada based on their race by not hiring them for the open positions in the National Alliance Department.

### a. Prima Facie Case

To establish a prima facie case in the failure to hire context, a plaintiff must show the following:

> (i) plaintiff belongs to a protected class; (ii) plaintiff applied and was qualified for a job for which the employer was seeking applicants; (iii) despite being qualified, the plaintiff was rejected; and (iv) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications.

*Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005). The elements remain the same whether that case is brought under § 1981 or Title VII. *Carney v. City and County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008). Similarly, Title VII's analytical framework applies equally to claims brought pursuant to section 1981. *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001) (quotation omitted). In determining whether Plaintiffs

have made a prima facie case of discrimination under § 1981, the Court
views the facts in the light most favorable to the Plaintiffs.

Plaintiff Tejada submitted an application for a position in the National
Alliance Department, but then learned that Defendant had not received it.
Tejada then tried to resubmit her application online, but knew she had not
succeeded in doing so. The Court finds that Tejada did not submit an
application for the open positions.

Plaintiff Manning submitted an application for the open positions, then
asked Sprague if she had received it. Sprague checked, then told Manning
that she had not. Manning's impression, based on Sprague's attitude and
manner of telling her that information, was that Sprague thought Manning
should not apply for the position, so Manning chose not to pursue the matter
further. Manning has not shown that she applied for the open positions. The
Court cannot deem Plaintiffs' initial attempts to submit applications to be
sufficient where both Plaintiffs knew their attempts had been unsuccessful
and chose not to remedy their failure. Neither Plaintiff thus makes a prima
facie case of discrimination.

### b. Legitimate Nondiscriminatory Reason

But even if a prima facie case has been made, Defendant has asserted
legitimate nondiscriminatory reasons for not hiring any of the Plaintiffs. First,
it is undisputed that Defendant did not receive any application from any
Plaintiff. Second, Defendant shows that two of the three persons hired were

objectively better qualified than either of the Plaintiffs. Defendant hired Teel in the Customer Service position because Teel previously had over two years in a Customer Service position within Epoch 2, and Creasy believed Teel had performed well in that role. Neither Plaintiff has shown similar experience.

Defendant hired Carpenter for one of the Claims Examiner positions because she was an Epoch Group employee who properly submitted an online application despite having encountered problems in doing so, and had over twenty years of experience as a claims examiner. Plaintiffs do not suggest that their objective qualifications meet or exceed those of Carpenter. Defendant hired outside applicant Franco for the other Claims Examiner position because they received her application and deemed her to be qualified. Defendant has thus established legitimate, non-discriminatory reasons for their hiring decisions.

### c. Pretext

Plaintiffs bear the burden to present evidence that the proffered reasons are pretextual, or unworthy of belief. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (quotation marks omitted). Disturbing procedural irregularities may provide support for a plaintiff's assertion of pretext. *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1002-03 (10th Cir. 2011). The kinks in Defendant's online application procedure are a procedural irregularity, but not a disturbing one, suggestive of discrimination. That problem impacted applicants irrespective of their race,

17

as evidenced by the fact that applicant Carpenter experienced the same or similar problems as did Tejada and Manning.

Subjectivity may also evidence pretext. *Jones v. Barnhart*, 349 F.3d 1260, 1267-68 (10th Cir. 2003). But Defendant cites no subjective factors to justify its challenged decisions. Instead, Defendant relies only on objective factors – Carpenter's 20 years' experience as a claims examiner compared to Plaintiffs' few years' experience; and Teel's two years of customer service experience compared to Plaintiffs' lack of any such experience.

As to Franco, Defendant asserts only that it received her application and found her to be qualified. To the extent Plaintiffs may contend that in their view, they are more qualified than Franco, or any other applicant, such an assertion does not create a material factual dispute. *See Simms v. Okla. ex rel. Dep't Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1329 (10th Cir. 1999).

> When two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria.

*Simms*, 165 F.3d at 1330 (quotation omitted). S*ee Garrison*, 428 F.3d at 938 (recognizing that the courts should not second guess the business decisions of employers in the absence of evidence of discriminatory motives). Plaintiffs do not attempt to show either of them was clearly better qualified than Franco for the position, nor does the record support such an assertion.

18

Plaintiffs assert, however, that the decision was based on unlawful criteria, and that Defendant's stated reasons are merely pretext for discriminatory animus Dk. 51, p. 10. Tejada contends that pretext is shown by the following: Sprague made negative comments about how persons had been taking too much sick leave and about Tejada's FMLA leave; Sprague told Tejada's supervisor that Tejada could not get up and move around as needed; and Sprague told Tejada to take her insulin shots on breaks, if possible. Tejada believes Sprague was hostile towards her regarding her disability and FMLA leave. Dk. 51, p. 4. But these facts have no tendency either to show that Sprague's decision not to select Tejada for any of the three open positions was based on Tejada's race, or to cast doubt on the truth of Defendant's stated reasons for not hiring Tejada.

Manning relies on Sprague's comments while handling Manning's complaint about a racial slur made by Downey. Manning told Sprague in August of 2009 that Downey had made a racial slur in her presence, while speaking to someone else. Sprague told Manning that she did not want to report the racial slur to HR because she didn't want Downey to lose her job. Manning then went to Epoch's Vice President, who informed HR of the incident. Sprague called Manning into her office several times thereafter and told Manning that Manning would have to find a way to deal with the situation, because Downey was returning to work. Manning reported these conversations to Bowley in HR, and let her know she found them to be

stressful. Sprague continued to bring up the topic and implied to Manning that it was her fault that Downey might be terminated, which would harm Downey's family. Manning too had to take leave for her mental health due to the continued treatment by Sprague. When she took leave, she was initially given attendance occurrences and had to seek out Bowley to ensure she was not disciplined.

But the undisputed facts also establish that despite Sprague's stated reluctance to Manning, Sprague did inform HR of the racial slur immediately after Manning told her about it. Sprague also brought Bowley, from HR, to Manning, and HR immediately began an investigation. HR determined that Downey had made the racial slur as alleged by Manning, apparently several months before Manning reported it. Due to a medical leave of absence, Downey was absent during the investigation. The day Downey returned from medical leave, she was terminated for having made the racial slur. Thereafter, HR and Sprague worked with Manning to provide her emotional support, including allowing her to take time off work without penalty to deal with the stress of the situation.

The facts of record, viewed in the light most favorable to Plaintiffs, raise no inference that Sprague's decision in October to award any of the three open positions to persons other than Manning and Tejada was based on race discrimination. Nor do the facts suggest that Defendant's stated reasons for its hiring decisions are unworthy of belief. Accordingly, summary

20

judgment is warranted on Plaintiffs' Section 1981 claims of race

discrimination.

### C. Section 1981 Retaliation

Plaintiffs Manning and Tejada contend that Defendant illegally

retaliated against them based on their complaints of race discrimination by

not hiring them for the three open positions at National Alliance in November

of 2009. Defendant responds that Plaintiffs have not made a prima facie

case of retaliation because no causal connection between the protected

conduct and the adverse action has been shown.

### 1. Prima Facie Case

Plaintiffs attempt to show retaliation indirectly, by relying on the

three-part *McDonnell Douglas* framework. *See Twigg*, 659 F.3d 987. To state

a prima facie case for retaliation under Section 1981, a plaintiff must show:

> (1) that [s]he engaged in protected opposition to discrimination, (2)
> that a reasonable employee would have found the challenged action
> materially adverse, and (3) that a causal connection existed between
> the protected activity and the materially adverse action.

*Khalik v. United Air Lines*, 671 F.3d 1188, 1192-93 (10th Cir. 2012), quoting

*Twigg*, 659 F.3d at 998 (internal quotation marks omitted) (alteration in

original); *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008)

("The test for establishing a prima facie case for retaliation is the same

under both Title VII and 42 U.S.C. § 1981."). If the plaintiff establishes a

prima facie case, the employer must then offer a legitimate, nonretaliatory

reason for its decision. *Somoza*, 513 F.3d at 1211. Once the employer has

21

satisfied that burden of production, the plaintiff must show that the employer's reason is merely a pretext for retaliation. *Id*.

Defendant primarily challenges the third element – causation. A "causal connection" between a protected action and a subsequent adverse action can be shown through "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (quotation omitted).

### Tejada

Plaintiff Tejada contends that she mediated a claim with the EEOC and Defendant in September of 2009, and that her signing of a settlement agreement in October constitutes protected conduct within six weeks of November's adverse employment action. But the mediated and settled matters related solely to Tejada's allegations of disability and perhaps national origin discrimination, not race discrimination. Tejada's administrative claim dated August 14, 2009, alleged: 1) failure to reasonably accommodate her disability, *i.e.,* to let her walk three feet from her desk every hour because of her medical condition; and, 2) national origin discrimination because she was written up for sleeping at her desk, but a white person who took naps in the conference room that week was not written up. The matters included in that claim were settled in October. Tejada thus apparently contends that her participation in the disability (and

22

arguably national origin) mediation and settlement constitutes protected

activity for purposes of her Section 1981 retaliation claim. But filing an EEOC

claim and participating in an EEOC mediation or settlement related solely to

matters not protected by Section 1981 does not constitute protected conduct

for purposes of Section 1981.

> To state a retaliation claim under § 1981, a plaintiff must allege a
> defendant retaliated against him because the plaintiff engaged in
> statutorily protected activity…. As with other statutory retaliation
> claims, such a claim under § 1981 requires that the protected activity
> involve the assertion of rights encompassed by the statute.

*Jimenez v. Wellstar Health System*, 596 F.3d 1304, 1311 (11th Cir. 2010)

(citations omitted). Section 1981 forbids employer retaliation against an

employee because she has opposed race discrimination, *CBOCS*

*West, Inc. v. Humphries*, 553 U.S. 442 (2008), but Tejada has not shown

that she complained to her employer or otherwise opposed race

discrimination, or participated in any proceeding alleging race discrimination.

She thus fails to make a prima facie case of race-related retaliation.

### Manning

Manning's sole retaliation claim is based on her race. For protected

conduct, Manning relies solely on her complaint to Sprague of a racial

epithet on August 21, 2009. This internal complaint is assumed to be

protected conduct. *See Robbins v. Jefferson County Sch. Dist. R-1*, 186 F.3d

1253, 1258 (10th Cir. 1999) (informal complaints to superiors or the use of

the employer's internal grievance procedures constitutes protected activity under Title VII).

The sole adverse act argued in Plaintiffs' brief is Defendant's failure to hire Plaintiffs for one of the three open positions at National Alliance in the fall of 2009. Defendant's decisions to hire others for those positions were made on November 18th, at the earliest. Thus Manning's protected conduct was 89 days before the adverse action.

Manning does not contend that the employer's acts were close enough in time to the protected conduct to show a causal connection, tacitly recognizing what this Court expressly finds - that the temporal gap between Manning's internal complaint and Defendant's hiring of others is too wide to raise an inference of retaliatory motive on its own. *See, e.g., Anderson*, 181 F.3d at 1179; *Parrett v. Raytheon Co.*, 78 F.3d 597 (Table) (10th Cir. 1996); *Piercy v. Maketa*, 480 F.3d 1192, 1198 (2007).

Plaintiff thus has the burden to show more than temporal proximity to establish causation. *C.R. England*, 644 F.3d at 1052. Plaintiffs contend such evidence is found by combining the temporal proximity with the fact that the positions were awarded to individuals who had not registered complaints of discrimination, and with "the continued unfair and retaliatory treatment suffered by all plaintiffs during the intervening periods." Dk. 51, p. 19. The evidence supporting this latter assertion is conclusory, since it is based solely on Plaintiffs' testimony and their own perceptions of unfair treatment.

*See Miller v. Automobile Club of New Mexico, Inc.*, 420 F.3d 1098, 1122 (10th Cir. 2005) (finding a plaintiff's own perspectives insufficient to make a prima facie case), *overruled on other grounds bv Burlington Northern & Santa Fe Rv. Co. v. White*, 548 U.S. 53 (2006); *Khalik*, 671 F.3d at 1193 (finding plaintiff's allegations not entitled to the assumption of truth when they are entirely conclusory); *Cf. Amro v. Boeing Co.*, 232 F.3d 790, 798 & n. 6 (10th Cir. 2000) (employee's own perceptions of lack of fair treatment are insufficient to state a Title VII claim); *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1177 (10th Cir. 2000) ("A plaintiff cannot create a triable issue of fact by making an assertion without supporting facts.").

That the employees selected to fill the positions had not complained of discrimination is similarly insufficient to raise an inference of retaliation, even in conjunction with the timing of the events. Because no genuine issue of a causal connection has been shown, Plaintiffs have failed to raise a material question of fact regarding a prima facie case of retaliation under Section 1981.

**Pretext**

But even assuming that a Plaintiff has sufficiently shown a prima facie case of illegal discrimination or retaliation, the Court finds summary judgment appropriate. For the same reasons set forth above in discussing Plaintiffs' race discrimination claims, the Court finds that Defendant has met its burden to show legitimate reasons for not selecting any Plaintiff for any of

the three open positions, and that Plaintiffs have failed to show that such reasons were pretextual. *See Jaramillo v. Adams County School Dist. 14*, _ F.3d __ (10th Cir. June 12, 2012) ("Courts are understandably reluctant to allow theories of institutional racism to displace the requirement of personal knowledge of facts concerning adverse employment actions."); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1241 (10th Cir. 2004) ("Mere conjecture that the [defendant] acted with discriminatory reasons will not suffice to establish pretext.").

### D. Alternative Holding

As an alternative holding, in the event the Court in fact has subject matter jurisdiction over all claims stated in the pretrial order, the Court finds that no material question of fact regarding pretext has been shown as to Defendant's treatment of any of the three Plaintiffs. Manning and Tejada's failure to show pretext is addressed above: Chaney's is addressed below.

Chaney contends pretext is shown by the fact that Creasy verbally reprimanded him in Sprague's presence for his decreased workload following his carpal tunnel surgery, even though he requested an accommodation of a lighter workload. Plaintiff has not shown that Creasy was aware of Chaney's surgery or accommodation, but even assuming such knowledge, "[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus...." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994). But even assuming this one statement evidences

Creasy's knowledge of and ill will toward Chaney based on a disability, it fails to raise an inference that Sprague's decision to terminate Chaney's employment or to hire another was based on Chaney's disability. Nor does the verbal reprimand tend to cast doubt on the truth of Defendant's stated reasons for not hiring Chaney, which is that he did not apply for any position. Chaney admits he did not apply for any of the open positions.

### E. Implied Contract Claim

Plaintiffs' last claim is that Defendant breached its implied contract not to discriminate against employees in protected categories and not to retaliate against employees who complained of discrimination. Dk. 51, p. 19-20. Defendant responds that no such implied contract exists.

### 1. Alternative Remedies Doctrine

The Court finds it unnecessary to reach the merits of this claim because the claim is precluded by the alternative remedies doctrine. "The general rule is that when the reasons pled for an employee's termination violate federal public policy, no state cause of action is pled." *Adair v. Beech Aircraft Corp.*, 1991 WL 97610, 22 n. 8 (D.Kan. 1991); *See Morriss v. Coleman Co., Inc.*, 241 Kan. 501, 512-13 (1987) (citing *Murphy v. City of Topeka*, 6 Kan.App.2d 488 (1981)). *See also Smitley v. Cigna Corp.*, 640 F.Supp. 397, 401 (D.Kan. 1986).

> The alternative remedies doctrine at issue here, referenced sometimes as preclusion, is a substitution of law concept. Under the alternative remedies doctrine, a state or federal statute would be

substituted for a state retaliation claim if the substituted statute provides an adequate alternative remedy.

*Flenker v. Willamette Industries, Inc.*, 266 Kan. 198, 202-03 (1998).

Thus where a state or federal statute provides an adequate alternative remedy, state common law claims based on the same prohibited acts are precluded. *See Polson v. Davis*, 895 F.2d 705, 709 (10th Cir. 1990). "[T]he Polson rationale extends to plaintiffs seeking to assert a common law cause of action for retaliation when they have a federal statutory right." *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1399 (10th Cir. 1997).

The Kansas Supreme Court has not addressed whether Section 1981 provides an adequate remedy for violations of its prohibitions. But this court has found that it does. *See Lasley v. Hershey Foods Corp.*, 35 F.Supp.2d 1319, 1324 (D.Kan. 1999). The federal statutory remedy provides the possibility of relief under the circumstances, so is adequate. Assuming the § 1981 claim is successful, its remedy would compensate the Plaintiffs for the same injury alleged in the Plaintiffs' implied contract claim. Further, Section 1981 is interpreted similarly to Title VII, and the Kansas Supreme Court has held that Title VII provides an adequate remedy for violations of the public policy enunciated therein. *Flenker*, 967 P.2d at 299.

Plaintiffs' common law breach of implied contract claim alleges that Defendant breached its duty to refrain from race discrimination, national origin discrimination, and related retaliation. Section 1981 and Title VII state the federal public policy that employers refrain from those very acts;

28

therefore Plaintiffs' implied contract claim is precluded because it is based on the same acts prohibited by those federal statutes. *See Daniels v. United Parcel Service, Inc.*, 797 F.Supp.2d 1163, 1196-97 (D.Kan. 2011) (finding implied contract claim barred because it was based on the same retaliation alleged under Title VII, the ADEA, the KAAD, and the KADEA, which all provided an adequate remedy); *Cf Adair*, 1991 WL 97610, 22 n. 8 (noting plaintiff had no claim for breach of an implied contract to the extent she relied on a duty not to discriminate on the basis of sex or age).

### 2. Merits

Alternatively, the Court finds that no genuine issue of material fact has been shown as to the parties' mutual intent to enter an implied contract. *See Morriss*, 241 Kan. at 613-14 (implied contract theory requires a showing of mutual intent). Plaintiffs, when hired, each signed an Employee Handbook Acknowledgement stating that they had received the Employee Handbook, that they had read and understood the terms of the Handbook, and that "the handbook is neither a contract of employment nor a legal document." Each Plaintiff also signed Employee Handbook Amendment Acknowledgment Forms reiterating that the "handbook is neither a contract of employment nor a legal document."

Defendant's Employee Handbook states that it is not intended to create a promise of employment other than "at will" employment:

> ...The company retains the right to modify, alter or revise any of the published or unpublished policies or practices . . .The handbook is not

29

intended to create any promise of employment for any specified period of time. Employment at EPOCH is "at will" and is entered into voluntarily. You have the right to end the work relationship with EPOCH, with or without advance notice of cause, and the company has an identical right. . .

Dk 51, Ex. H, p. 2. The "at-will" language recurs throughout the handbook.

Defendant's Employee Handbook also contains policies on Equal Employment Opportunity and Affirmative Action, which provide for "equal opportunity in employment action in accordance with federal, state, or local law." *Id.*, p. 5. The employment policies also prohibit retaliation.

The evidence shows only Plaintiffs' unilateral expectations of continued employment. *See Kastner v. Blue Cross and Blue Shield of Kan., Inc.*, 21 Kan.App.2d 16, 28-29 (1995) (disclaimers are strong evidence that the employer did not intend to bind itself to an implied contract, especially where the evidence shows that the employee has read the disclaimer).

Lastly, even assuming a valid contract, the Court finds no material question of fact regarding any breach, given the Court's findings that Defendant has not been shown to have engaged in prohibited discrimination or retaliation based on any protected category.

IT IS THEREFORE ORDERED that Plaintiffs' motion to amend the pretrial order is granted.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is granted.

Dated this 26th of June, 2012 at Topeka, Kansas.


                       s/ Sam A. Crow
                       Sam A. Crow, U.S. District Senior Judge